**Joseph H. SOLIEN, Regional Director of Region 14 of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TEAMSTERS LOCAL UNION NO. 688 affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Respondent.**

No. 84–2219C(2).

United States District Court,
E.D. Missouri.

Oct. 12, 1984.

Mary J. Tobey, N.L.R.B., St. Louis, Mo., for petitioner.

Clyde E. Craig, St. Louis, Mo., for respondent.

MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court on the petition of the National Labor Relations Board (Board) for an injunction prohibiting Teamsters Local Union No. 688 (Local 688) from picketing at the Isolda Avenue garage of Airlane Cab Co., Inc., Skyway Cab Co., Inc., and Air-Ways Cab Co., Inc. (the Cab Companies) and at Lambert Airport pending the final disposition of an unfair labor practice charge filed with the Board by the Cab Companies. The Cab Companies filed an unfair labor practice charge with the Board alleging that Local 688 was violating Section 8(b)(4)(B) of the National Labor Relations Act (the Act), codified as amended at 29 U.S.C. §§ 151–69, by engaging in a secondary boycott against the Cab Companies. Pursuant to section 10($l$) of the Act the Board filed a petition for injunctive relief with this Court. A hearing on all issues was held by the Court, and both parties to the action presented evidence for the Court's consideration. The Court adopts the following memorandum as its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

The Cab Companies are each corporations and employers engaged in interstate commerce within the meaning of the Act. During the past year, in the course and conduct of their business operations, the Cab Companies derived gross revenues in excess of $500,000 and purchased and received in St. Louis, Missouri, goods and materials valued in excess of $20,000 directly from points outside the State of Missouri. Local 688, against whom the Cab Companies filed the unfair labor practice charge, is a labor organization under the provisions of the Act.

Prior to July 28, 1984 the Cab Companies provided services from Lambert Airport utilizing the services of employee drivers, who were paid on a commission basis. The cab drivers employed by the Cab Companies were represented by Local 688 and terms and conditions of employment were governed by a collective bargaining agreement, the last of which expired on April 30, 1984.

Negotiations were conducted during the summer of 1984 during which the Cab Companies proposed to change from the commission method of compensation to a lease operation. The parties did not reach agreement on this issue.

On July 28, 1984, Air-Ways, and on August 31, 1984, Airlane and Skyway, implemented changes in operations. Under the new plan persons wishing to drive the cabs are required to sign a lease agreement and pay a set fee. The independent contractors who lease the cabs receive no wages or benefits from the Cab Companies and are not required to make any reports to the Cab Companies. All fares and tips are kept by the independent contractors. The Cab Companies require no uniforms and provide no dispatchers.

Picketing by Local 688 commenced on July 28, 1984, against Air-Ways and on July 31, 1984, against Airlanes and Skyway at the garage facilities of the Cab Companies and at the taxi stands located at the passenger arrival doors to the terminal at Lambert St. Louis International Airport.

From July 28, 1984, to July 31, 1984, Local 688's picket signs read as follows:

Employees of Air-Ways

We have no dispute with any

other employer at this location

ON STRIKE

Teamsters Local Union 688

I.B. of T.C.W. & H. of A.

From July 31, 1984, and continuing to date, the picket signs read:

Employees of

Airway Skyway Airlane

We have no dispute with any other

employer at this location

ON STRIKE

Teamsters Local Union 688

I.B. of T.C.W. & H. of A.

When Air-Ways first implemented the lease program the independent contractors

were not required to pay the rental fee. Lillian Miceli, President of Air-Ways, testified that the lease fee was waived because of the difficulty she encountered in attempting to get independent contractors. She testified that they were harrassed by the picketers and that many worked only a half day and then quit. She testified that the independent contractors drove for approximately three weeks without being required to pay the lease fee. The testimony of Ervin K. Eltinge, President of Airlane and Vice President of Skyway, was substantially the same on this point. He testified that the independent contractors were allowed to drive the cabs without paying the lease fee for a period of approximately three weeks.

On August 6, 1984, the Cab Companies filed charges with the Board alleging that Local 688 has been and is engaging in unfair labor practices within the meaning of Section 8(b)(4)(B) of the Act. On September 19, 1984, amended charges were filed with the Board. The Board maintains that Local 688 has a primary dispute with the independent contractors, and that there is reasonable cause to believe that the picketing of the Cab Companies with signs indicating that the dispute is with the Cab Companies is an unfair labor practice prohibited by Section 8(b)(4)(B).

■ The Court has jurisdiction over the case, and venue is proper in this district. The unfair labor practice in question "is alleged to have occurred" in this district, and this Court has the power to issue "appropriate injunctive relief pending the final adjudication of the Board with respect to [this] matter" under Section 10(*l*). In a Section 10(*l*) proceeding such as this the function of this Court is to determine whether there is reasonable cause to believe that a violation of Section 8(b)(4)(B) has occurred and that injunctive relief is just and proper. The statutory standard of reasonable cause is satisfied even if there is a showing of factual issues which must be resolved by the Board. The ultimate determination of a violation is left to the Board, and subject to review by the Court

of Appeals. *Solien v. United Steelworkers,* 593 F.2d 82, 86–87 (8th Cir.1979), *cert. denied,* 444 U.S. 828, 100 S.Ct. 54, 62 L.Ed.2d 36; *Wilson v. Milk Drivers & Dairy Employees Local 471,* 491 F.2d 200, 203 (8th Cir.1974).

Thus, this Court must determine, based upon the evidence presented to it at the hearing whether or not there is reasonable cause to believe that Local 688 is engaging in an unlawful secondary boycott prohibited by Section 8(b)(4)(B). A secondary boycott is an effort by a labor organization to force or require "any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9...."

■ Under the facts of this case the Court concludes that there is reasonable cause to believe that the picketing of Local 688 is a prohibited secondary boycott directed toward the Cab Companies and the customers of the Cab Companies to force them to cease doing business with the independent contractors who are currently leasing the cabs.

In *Otis Elevator v. Local 989,* 269 NLRB No. 162, 5–6 (April 6, 1984), the Board held that where a decision by a company "turns upon a change in the nature or direction of the business," rather than upon a desire to reduce labor costs, it is not subject to mandatory bargaining. Here, the testimony indicates that the decision on the part of the Cab Companies to change from a commission system to a lease system was based upon a change in the nature of the business. Miceli indicated that she decided to change to the lease format because she was getting tired and wanted to have less work for herself. Eltinge indicated that the commission system, with its resultant paperwork, was the reason behind the

changes made by Airlane and Skyway. He stated that in the past his mother had been the bookkeeper and that upon her death his father, nearing age 70, had taken them over but that the amount of work was getting to be too much for him. Nothing indicates that the reason for the change was a reduction of labor costs.

The Union points to the fact that the independent contractors were allowed to drive for the first three weeks without paying the lease fee as evidence that the changes were not simply management decisions to change the nature of the business but, rather, were made after the picketing began in an apparent attempt to retaliate against Local 688. The testimony, however, does not support this conclusion. Both Miceli and Eltinge testified that they allowed the three week period without the lease payments as an incentive to encourage independent contractors to engage in business with the Cab Companies. Both testified that the incentive was necessary because the independent contractors were being harrassed and the working conditions were unmanageable. Further, the fact that during the first few days independent contractors were driving cabs without having signed a lease is not determinative. Nothing in the testimony indicates that during that time period the independent contractors were being paid on a commission basis, that they were required to come in and leave at specified times or that they were receiving benefits from the Cab Companies. Considering the fact that the lease program was apparently instituted on July 28, 1984, for Air-Way and on July 31, 1984, for Airlane and Skyway, the mere fact that an incentive, *i.e.*, up to three weeks of free leases, was provided the drivers does not convince the Court that the lease operations began only after the picketing began.

Thus, the facts indicate that there is reasonable cause to believe that under *Otis Elevator* the Cab Companies were free to change over from a commission system to a lease system. As a result, Local 688 has no valid dispute with the Cab Companies. Its primary dispute, the Board argues, is with the independent contractors who are leasing cabs from the Cab Companies and that by picketing the companies at their headquarters and at the airport with signs indicating that their grievance is against the *companies'* practices, Local 688 is engaging in an unlawful secondary boycott.

The Court agrees. Under *Otis Elevator* the Union has no valid dispute with the Cab Companies. The only persons with whom it could possibly have a dispute with are the independent contractors. The mere fact that the Union characterizes its dispute as being with the Cab Companies does not change its true nature. Because its dispute is with the independent contractors, the Court has reasonable cause to believe that the picketing of the Cab Companies' garage on Isolda Avenue and the picketing at the airport designating the Cab Companies as the target of the picketing constitutes secondary activity under Section 8(b)(4)(B). Accordingly, the Court will issue the injunction requested.

### JUDGMENT

In accordance with the Memorandum filed this date and incorporated herein,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that until final disposition of the matters now pending before the National Labor Relations Board, Teamsters Local No. 688, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and all its officers, representatives, agents, servants, employees, attorneys and all members and persons acting in concert or participation with it or them, be, and they hereby are, enjoined and restrained from:

a) Picketing at the Isolda Avenue garage of Airlane Cab Co., Inc., Skyway Cab Co., Inc., and Air-Ways Cab Co., Inc., and at Lambert St. Louis International Airport.

b) In any manner, or by any means, including picketing, orders, directions, instructions, requests or appeals, however given, made or imparted, or by like or related acts, or by permitting any such to remain in existence or effect, engaging in

or inducing or encouraging any individual employed by Airlane Cab Co., Inc., Skyway Cab Co., Inc. and Air-Ways Cab Co., Inc., or by any other person engaged in commerce or in an industry affecting commerce, to engage in a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials or commodities, or to perform any service, or in any manner, or by any means, threatening, coercing or restraining Airlane Cab Co., Inc., Skyway Cab Co., Inc., and Air-Ways Cab Co., Inc., or any other person engaged in commerce or in an industry affecting commerce where in either case an object thereof is to force or require Airlane Cab Co., Inc., Skyway Cab Co., Inc., and Air-Ways Cab Co., Inc., or any other person, to cease doing business with the independent contractors.